UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Respondent, | ) | |
| v. | ) | Nos. 2:11-CR-90 |
| | ) | 2:15-CV-94 |
| JESUS MANUEL PANTOJAS MULERO, | ) | |
| Petitioner. | ) | |

## **MEMORANDUM OPINION**

Pending before the Court is the motion of Jesus Manuel Pantojas Mulero ("Pantojas Mulero" or "Petitioner"), a federal inmate, to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255, [Doc. 212].[1] The United States has responded in opposition to the §2255 motion, [Doc. 217], and Petitioner has not replied. Because the records and files of the case conclusively establish that Petitioner is not entitled to relief under §2255, no evidentiary hearing is necessary. For the reasons which follow, the Court finds Petitioner's §2255 motion meritless and it will be DENIED and DISMISSED with prejudice.

### I. Procedural and Factual Background

A federal grand jury indicted Pantojas Mulero and four co-defendants on October 13, 2011, [Doc. 3]. A superseding indictment was returned on December 13, 2011, [Doc. 51], adding a fifth co-defendant. Pantojas Mulero was charged in seven counts with various drug offenses (Counts One, Two, Three, Ten, Eleven, and Twelve), and with being an illegal

---

[1] All document references are to the docket in No. 2:11-CR-90.

alien in possession of ammunition(Count Fourteen), [*Id.*]. On February 21, 2012, Petitioner agreed to plead guilty, pursuant to a negotiated plea agreement, to Counts One (conspiracy to distribute 100 kilograms or more of marijuana in violation of 21 U.S.C. §§841(b)(1)(B) and 846), Three (conspiracy to distribute a quantity of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C)), and Fourteen (illegal alien in possession of ammunition in violation of 18 U.S.C. § 922(g)(5)(A) and 924(a)(2)), [Doc. 110], with the remaining counts to be dismissed. As a factual basis for his guilty pleas, Petitioner stipulated to the following facts:

> a) Through the testimony of several witnesses, the United States would demonstrate, beyond a reasonable doubt, that between November of 2010 and August 31, 2011, in the Eastern District of Tennessee, the defendant did knowingly, intentionally, and without authority, conspire with at least one other person to distribute and to possess with the intent to distribute 140.37grams of cocaine, a Schedule II controlled substance. In addition, the defendant, being an alien illegally or unlawfully in the United States, did have constructive possession of assorted ammunition at a stash house on 1725 Sulphur Springs Road, Morristown, Tennessee.
>
> b) On November 30, 2010, a confidential informant, working at the direction of law enforcement agents, called the defendant and the defendant agreed to sell the confidential informant cocaine. Later that day, the confidential informant met with co-defendant Ponce who sold the confidential informant 6.6 grams of cocaine.
>
> c) During the transaction, on November 30, 2010, Ponce told the confidential informant that they had just received a shipment of in excess of 200 pounds of marijuana and that they only had two pounds left. The defendant admits that he and others received approximately 215 pounds of marijuana in November of 2010 which had then been distributed to others.
>
> d) On December 29, 2010, a confidential informant, working at the direction of law enforcement agents, met with the defendant and co-defendant Ponce at a residence on McCalister Road in Morristown, Tennessee. During the meeting, the defendant and Ponce sold the informant 25.8 grams of marijuana.
>
> e) On July 8, 2011, a confidential informant working at the direction of law enforcement agents met with the defendant and co-defendant Lebordo Zuniga Benitez at the Shell gas station off of I-81 in Morristown,

Tennessee. During the meeting, the defendant and Zuniga sold the informant 450.7 grams of marijuana.

f) On July 13, 2011, a confidential informant working at the direction of law enforcement agents met with the defendant and co-defendant Zuniga at a restaurant on Cumberland Drive in Morristown, Tennessee. Prior to the meeting, agents surveilled the defendant and Zuniga travel to a residence 1725 Sulphur Springs Road, Morristown, Tennessee, and then to the restaurant. During the meeting, the defendant and Zuniga sold the informant approximately 54.33 grams of cocaine.

g) On August 16, 2011, a confidential informant, working at the direction of law enforcement agents, met with the defendant and co-defendant Ignacio Moreno-Serrano at a trailer in Morristown, Tennessee. The purpose of the meeting was for the confidential informant to purchase an ounce of cocaine. While at the trailer, Moreno-Serrano agreed to sell the confidential informant an ounce of cocaine, and, later on August 16, 2011, the confidential informant did purchase 27.64 grams of cocaine from Moreno-Serrano.

h) On August 23, 2011, a confidential informant, working at the direction of law enforcement agents, contacted the defendant regarding purchasing cocaine and marijuana. The defendant directed the confidential informant to meet co-defendant Moreno-Serrano at the entrance to a trailer park in Morristown, Tennessee. At that location, the confidential informant met with Moreno-Serrano and purchased 54.8 grams of cocaine. Moreno-Serrano then told the confidential informant to meet with the defendant at a hotel in Morristown, where the confidential informant purchased approximately 178 grams of marijuana from the defendant. In the hotel room, the confidential informant observed an additional 30 pounds of marijuana. The defendant admits that he had an additional 30 pounds of marijuana which he later distributed.

i) August of 2011, law enforcement agents, using a confidential informant, agreed to sell 250 pounds of marijuana to the defendant. During the meetings regarding this transaction, the defendant agreed that the deal would take place at the Home Depot in Johnson City, Tennessee on August 31, 2011.

j) On August 26, 2011, a confidential informant, at the direction of law enforcement agents had a recorded conversation with the defendant. During the call, the defendant said that he wanted to purchase 300 pounds of marijuana for $550.00 per pound. The defendant said that he had the money and that another individual had already provided him with $120,000.00 toward the purchase.

k) On August 31, 2011, agents conducted surveillance and observed several co-conspirators meet at the Sleep Inn Hotel located across State of Franklin from the Home Depot in Johnson City. At approximately 9:00 a.m., the confidential informants drove a U-Haul truck containing 263 pounds (or 120 kilograms) of marijuana to the Home Depot parking lot where they met with the defendant and co-defendant Moreno-Serrano. The defendant placed a call to have the money brought to the parking lot, and shortly thereafter, co-defendant Arteaga and co-defendant Cruz-Montes drove from the Sleep Inn to the Home Depot. Two bundles of wrapped U.S. currency equaling $110,000 were removed from the co-defendant's vehicle and given to the confidential informant. The police then arrived and arrested the defendant and the other co-defendants.

l) On August 31, 2011, agents executed a search warrant at 1725 Sulphur Springs Road, Morristown, Tennessee. In the house, agents found a drug ledger, over 50 rounds of assorted ammunition, digital scales, two bags with marijuana residue and plastic bags with marijuana residue. In the shed, agents found a bucket containing plastic bags and marijuana residue.

m) The defendant admits that he and co-defendant Zuniga were using the residence at 1725 Sulphur Springs Road, Morristown, Tennessee, to store and distribute marijuana. The defendant further admits that he had constructive possession of the ammunition in that residence and that he was an alien illegally and unlawfully present in the United States.

n) Cpl. Kenneth Hinkle of the Morristown Police Department has determined that the ammunition seized from 1725 Sulphur Springs Road, Morristown, Tennessee did travel in interstate commerce.

o) Between November of 2010 and August of 2011, the defendant obtained an average of 100 pounds of marijuana per month from several sources which he then further distributed in the Eastern District of Tennessee and Western District of Virginia. The defendant admits that he distributed a total of 364 kilograms of marijuana during this time frame.

p) In total, the defendant admits that he conspired to distribute 140.37 grams of cocaine, a Schedule II controlled substance and approximately 484 kilograms of marijuana, a Schedule I controlled substance.

[Doc. 110 at ¶¶ 4(a)-(p)].

Petitioner appeared before the Court on February 27, 2012, entered his guilty pleas, a presentence investigation report ("PSR") was ordered, and sentencing was set for August 27, 2012, [Doc. 116]. The PSR was disclosed to the parties on July 23, 2012. The PSR

established a base offense level for the drug offenses of 28 pursuant to USSG §2D1.1, two levels were added pursuant to USSG §2D1.1(b)(12) for maintaining a premise for the purpose of manufacturing or distributing a controlled substance, two levels were added pursuant to USSG §2D1.1(b) for obstruction of justice, three levels were added under USSG §3B1.1(b) because Pantojas Mulero was a manager or supervisor in criminal activity that involved five or more persons, resulting in an adjusted offense level of 35, [PSR, ¶¶ 35-41]. Because the adjusted offense level for the drug counts was greater than for the gun count, three levels for acceptance of responsibility were subtracted pursuant to USSG §3E1.1 and petitioner's total offense level became 32, [*Id.* at ¶¶ 42-52]. Petitioner's criminal history category was I, resulting in an advisory guidelines range of 121 to 151 months of imprisonment, with a five-year mandatory minimum on Count 1, [*Id.* at ¶¶ 74-75]. After Petitioner's objections were overruled, the Court adopted the calculations of the PSR, and Pantojas Mulero was sentenced to 151 months of imprisonment, [Doc. 177]. Judgment was entered on September 25, 2012, [Doc. 179].

Petitioner appealed to the Sixth Circuit Court of Appeals, [Doc. 181]. The Sixth Circuit granted the government's motion to dismiss the appeal based on Petitioner's waiver of his right to a direct appeal on May 30, 2014, [Doc. 204], and this timely § 2255 motion was then filed on April 20, 2015, [Doc. 212].

**II.    Standard of Review**

This Court must vacate and set aside Petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment

vulnerable to collateral attack." 28 U.S.C. §2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert.*

*denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Claims other than those of ineffective assistance of counsel are procedurally defaulted if not raised on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *see also Bousley*, 523 U.S. at 622-23. This hurdle a petitioner faces to excuse procedural default is "intentionally high[,]… for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Further, federal inmates are not entitled to relitigate claims that were raised and considered on direct appeal absent an intervening change in the law, or other such extraordinary circumstance. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

### III. Analysis and Discussion

#### A. Ground One--Entrapment Defense

Petitioner states his first claim of ineffective assistance of counsel as one of "failing to conduct a reasonable investigation regarding an entrapment defense that could have acquitted [him]," [Doc. 212 at 4]. In essence, Petitioner argues that counsel should have pursued an entrapment defense.

7

The defense of entrapment has two elements: (1) government inducement of the crime; and defendant's lack of predisposition to engage in the criminal activity. *United States v. Poulsen*, 655 F. 3d 492, 502 (6th Cir. 2011) (citing *United States v. Khalil*, 279 F. 3d 358, 364 (6th Cir. 2002)). "The government has the burden of proving beyond a reasonable doubt that the defendant was already willing to commit the crime." *United States v. Anderson*, 76 F. 3d 685, 690 (6th Cir. 1996) (quoting Sixth Circuit Pattern Jury Instruction 6.03). "The first element, government inducement," requires "more than merely afford[ing] an opportunity or facilities for the commission of the crime." *Poulsen*, 655 F. 3d at 502 (quoting *Mathews v. United States*, 485 U.S. 58, 66 (1988), and citing *United States v. Graham*, 856 F. 2d 756, 763 n.2 (6th Cir. 1988)). "Courts rarely focus the entrapment inquiry on this element," but rather focus on the second element, predisposition. *Id.* at 502. "The central inquiry . . . is whether law enforcement officials implanted a criminal design in the mind of an otherwise law-abiding citizen or whether the government merely provides an opportunity to commit a crime to one who was already predisposed to do so." *United States v. Pennell*, 737 F. 2d 521, 534 (6th Cir. 1984).

A number of factors are relevant for determining predisposition: (1) "the character or reputation of the defendant, including any prior criminal record," (2) "whether the suggestion of the criminal activity was initially made by the government," (3) "whether the defendant was engaged in the criminal activity for profit," (4) "whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion," and (5) "the nature of the inducement or persuasion supplied by the government." *United States v. Wilson*, 653 F. App'x 433, 438 (6th Cir. 2016) (quoting *Khalil*, 279 F. 3d at 365).

Viewing the evidence as a whole, the first, third and fifth factors weighed heavily in favor of the government. Although the defendant has a Criminal History Category of I, it is clear from the stipulated facts that the Petitioner had been heavily and extensively involved in the distribution of cocaine and marijuana long before the FBI's "reverse sting" in August, 2011, during which the Petitioner paid a confidential informant $110,000 for 300 pounds of marijuana. For instance, on November 30, 2010, Petitioner sold 6.6 grams of cocaine to a confidential informant working at the direction of law enforcement, [Doc. 110 at ¶ 4(b)], and, during the conversation, told the confidential informant he had just received a shipment of more than 200 pounds of marijuana and had only two pounds left. Petitioner or other co-conspirators made sales of marijuana or cocaine on December 29, 2010, July 8 and 13, and August 16 and 23, 2011. All of these individual sales culminated with Petitioner agreeing to purchase 300 pounds of marijuana from the confidential informant on August 26, 2011. Petitioner stipulated that he received an average of 100 pounds of marijuana a week from several sources of supply between November, 2010, and August, 2011, and distributed 364 kilograms of marijuana during that timeframe. He was clearly distributing marijuana to many buyers, other than the confidential informant.

"Predisposition evidence must be based on conduct near enough in kind to support an inference that the defendant's purpose included offenses of the sort charged, although it is not necessary that the past conduct be precisely the same as that for which the defendant is being prosecuted." *United States v. Al-Cholan*, 610 F. 3d 945, 951 (6th Cir. 2010) (internal quotation marks and alterations omitted). The Petitioner posits a wide array of facts from the record in support of his claim that he had a meritorious entrapment defense, claiming his "predisposition was created rather than a logical result of [his] past life style

9

(construction jobs)," [Doc. 212 at 21]. He argues that his predisposition "was the direct result of more than ten (10) contacts" by the confidential informant and that "'ADDITIONAL EFFORTS AT PERSUASION' were required to convince [him] to commit the crime," [*Id.*]. According to Petitioner, "all the phone calls were made by the confidential informant," there were "previous phone calls not mentioned in th[e] plea agreement" that were not answered, that the FBI first contacted him, and the FBI was "[i]n control," [*Id.* at 25]. He states that the confidential informant "gained trust" through five transactions and always paying in cash, and that he was "played" by the confidential informant, [*id.* at 26-27], and that after he received a call from another FBI informant who complimented his product as "really good' and "not like the crap we got the last time," he "was overcomed [sic]," [*Id.* at 29].

The first factor, seen by Petitioner as weighing in his favor, actually weighs heavily against him. Although Petitioner had no history of criminal convictions, he clearly had been engaged in the very same sort of criminal activity for a considerable period of time. He "admits that he and others received approximately 215 pounds of marijuana in November of 2010 [from others sources] which had then been distributed to others," and that he told the confidential informant on November 30, 2010, that he and co-defendant Ponce had just received 200 pounds of marijuana and had distributed all of it but two pounds. Petitioner had also received marijuana from "several sources" over a ten-month period for resale. Given that the first sale of drugs to the confidential informant of 6.6 grams of cocaine occurred after the distribution of the above referenced 215 pounds of marijuana, it hardly can be said that Petitioner had no predisposition for selling drugs. That conduct was precisely the same kind of conduct he engaged in with the FBI's confidential informants,

10

clearly establishing his predisposition to sell drugs. *See Al-Cholan*, 610 F. 3d at 951 ("[I]t is not necessary that the past conduct be precisely the same as that for which the defendant is being prosecuted."). The third factor, profit, likewise weighs heavily in favor of the government. Petitioner beyond question was involved in the offense for the profit to be made.

The fifth factor also weights substantially in the government's favor. Inducement, as noted above, requires something more than providing an opportunity to commit the offense. It requires "an opportunity plus something else—typically excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." *United States v. Gendron*, 18 F. 3d 955, 961 (1st Cir. 1994) (quoted with approval in *United States v. Dixon*, 396 F. App'x 183, 186 (6th Cir. 2010)). Petitioner could have refused to sell to the informant and could have resisted the temptation to be "overcome" by the substantial profit to be made from "really good" marijuana. In other words, the government did not plant in Petitioner's mind a disposition to sell marijuana. This means the fourth factor also weighs in favor of the government. There is a fundamental difference between a request from an FBI confidential informant to buy drugs from a person known to be involved in the drug trade and already engaged in the very kind of conduct for which he is being prosecuted and the situation where a government agent, through inducement and persuasion, puts excessive pressure on a defendant to commit a crime he was not otherwise inclined to commit.

That leaves only the second factor, arguably neutral at best for the Petitioner. While it is true that the FBI confidential informant made the initial contact with petitioner, with law enforcement approval, it was simply for the purpose of arranging an undercover

purchase of cocaine, and later marijuana, from an already established drug dealer. In short, Petitioner cannot show that any of the relevant factors weigh in his favor and any entrapment defense asserted would have been without merit and would have undoubtedly been unsuccessful. Counsel was not ineffective for failing to make a meritless argument or raise a frivolous defense. *See Greer v. Mitchell*, 264 F. 3d 663, 676 (6th Cir. 2001); *see also Chapman v. United States*, 74 F. App'x 590, 593 (6th Cir. 2003) ("Counsel is not required by the Constitution to raise frivolous defenses or arguments to avoid a charge of ineffective representation.").

### B. Ground Two-Logical and Comprehensible Arguments At Sentencing

Petitioner's motion lists the following "facts" in support of his second ground for relief: "The record is supporting the fact that my counsel failed to make logical arguments in regards to enhancements," referring to recordings offered at sentencing of conversations between Petitioner and another inmate at a local jail where they were both incarcerated, the leadership enhancement because counsel made "no argument" that the criminal activity did not involve five or more participants, the "witness intimidation enhancement," and counsel's "mambo-jumble illogical 'stash house' argument," [Doc. 212 at 5]. Petitioner seems to assume that additional arguments by counsel would have persuaded the Court to sustain his guidelines objections, although he does not identify what any of those arguments might have been. As the government suggests, Petitioner seems to conclude that, because counsel's arguments were unsuccessful, they must have been illogical, and counsel therefore rendered deficient performance.

First of all, Petitioner must allege more than conclusions. He must support them with facts with some probability of verity. *Green*, 454 F. 2d at 53; *O'Malley*, 285 F. 2d at

735. That Petitioner has not done so is fatal to his second claim. A lawyer's lack of success on an issue does not make him ineffective. Petitioner's arguments, however, fail on their merits as well and the Court will briefly address each one.

   1. **Introduction of Recordings**

Petitioner entered his guilty pleas on February 27, 2012, [Doc. 116]. Prior to that date, Petitioner was being held while awaiting trial at the Washington County Detention Center. On July 17, 2018, the Washington County Sheriff's Department informed the United States that a cellmate of the Petitioner had disclosed that Petitioner was attempting to locate a confidential informant in order to have him killed, [Doc. 172]. FBI Special Agent Greg Smith interviewed the informant and subsequently placed a recording device on the informant, who recorded a January 26, 2012 conversation with Petitioner attempting to acquire the address of a "snitch" so Petitioner's associates could kill him, [*Id.*]. The audio recording and a transcript of the conversation were provided by the government to United States Probation for use in preparing the PSR and disclosed to Petitioner in August, 2012, [*Id.*]. The recording was relied upon by the probation officer to apply a 2-level enhancement for obstruction of justice pursuant to USSG §3B1.1, [PSR at ¶¶ 27, 37].

Counsel for Petitioner objected to the enhancement and moved to suppress the statement, [Doc. 170], arguing that the statement violated Petitioner's Sixth Amendment rights, citing *Massiah v. United States*, 377 U.S. 201 (1964), and that the government had violated Rule 16 of the Federal Rules of Criminal Procedure by not disclosing the statement prior to the entry of Petitioner's guilty plea. After a hearing, the Court denied the motion to suppress and overruled Petitioner's objection, [Doc. 199]. Petitioner now claims that the failure to disclose the recording before he entered his guilty plea was a violation of *Brady*

13

*v. Maryland*, 373 U.S. 83 (1963), and its use amounts to "sentencing entrapment," [Doc. 212 at 30]. As a result, he claims counsel was ineffective for not raising the issue.

"Sentencing entrapment is similar to the subjective theory of entrapment and focuses on the lack of predisposition to commit the greater offense." *United States v. Hammadi*, 737 F. 3d 1043, 1048 (6th Cir. 2013) (citing *United States v. Strickland*, 342 F. App'x 103, 107 (6th Cir. 2009) (internal quotation marks omitted)). On the other hand, sentencing manipulation "tracks the objective theory of entrapment and focuses on the government's conduct. *Id.* (citing *Strickland*, 342 F. App'x at 107). The Sixth Circuit has not yet recognized defenses of either sentence manipulation or sentence entrapment. *Id.* at 1048; *see also United States v. Flowers*, 712 F. App'x 492, 504 (6th Cir. 2012).

In addition to the Sixth Circuit not having recognized the defenses of sentence manipulation or sentence entrapment, Petitioner's argument clearly fails because there was no *Brady* violation. In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Before a defendant can establish a *Brady* violation, he must show that the non-disclosed evidence was (1) favorable to him; (2) material; and (3) that the prosecution had the evidence and failed to disclose it. *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner makes no argument, and could not make a good faith argument, that the recording of his jailhouse conversation was in any way favorable to him, and his claim fails for that reason alone. *See United States v. Bibby*, 752 F. 2d 1116, 1125 (6th Cir. 1985) (holding that only relevant exculpatory evidence must be divulged to defendant).

## 2. "Stash House" Enhancement

Petitioner's offense level was also increased by two levels pursuant to USSG §2D1.1(b)(12) for maintaining a premise for the purpose of manufacturing or distributing a controlled substance, [PSR at ¶ 36]. Counsel for Petitioner objected and argued that there was no proof to support the enhancement, [Doc. 199 at 41-43]. After being confronted by Petitioner's stipulation in the plea agreement that Petitioner and a co-defendant "were using the residence at 1725 Sulphur Springs Road, Morristown, Tennessee, to store and distribute marijuana," [PSR at ¶ 21], counsel "reluctantly" withdrew the objection, [Doc. 189 at 43]. This, Petitioner argues, was a "grave error," [Doc. 212 at 31].

The enhancement applies to a defendant "who (1) knowingly (2) operates or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Johnson*, 737 F. 3d 444, 447 (6th Cir. 2013). Given Petitioner's admission referenced above that he used the residence for that very purpose, the enhancement clearly applied and counsel was not ineffective for withdrawing the objection.

Petitioner seems to argue that his stipulation, leading to the withdrawal of his objection, was the result of counsel's "failure to review, to translate, to examine [the stipulation] with me in a proper way, NOT through out his associate who claims is bilingual [sic]," [Doc 212 at 31]. Yet the record in the case clearly refutes any allegation that counsel did not properly review, examine or translate any part of the plea agreement. At the change of plea hearing, Petitioner testified under oath that all pleadings in the case had been translated into Spanish and read to him in Spanish, his native language, [Doc. 212 at 4-5], that he understood what was happening, [*id.* at 5-6], that his attorney had explained all the terms of the plea agreement, that he understood all its terms and had signed the agreement,

15

[*id.* at 11], that he understood there was no agreement as to the sentence he would receive and any lawful sentence up to the statutory maximum could be imposed, [*id.* at 14-15, 21], that the factual stipulation was read to him before he signed the plea agreement and he reviewed it carefully with his attorney, [*id.* at 17], that he agreed with the summary of what he did in the case as set out in his plea agreement and the facts contained in the stipulation were true, [*id.* at 17-18], that he understood the Court might consider other facts at sentencing, [*id.* at 18], that he understood the Court could not determine his advisory guidelines range or sentence until the PSR was prepared and both he and the government had the opportunity to object, [*id.* at 24], that he understood all the factors the Court would consider before determining his sentence, [*id.* at 25-26], that the Court could impose a sentence more harsh than the one called for in the guidelines, [*id.* at 26], and that he understood that any estimate of his advisory guidelines range by his attorney was not binding on the Court, [*id.* at 27]. Nothing in this record even remotely supports Petitioner's claim.

### 3. The Leadership Enhancement/Five Participants

The Court applied a two-level enhancement under USSG § 3B1.1(b) on the basis that the Petitioner was a manager or supervisor, and the criminal activity involved five or more participants. Petitioner refers to this claim of ineffective assistance of counsel as it relates to this enhancement only in a perfunctory way and does not develop the arguments with supporting factual allegations. For that reason, this claim fails. In any event, the record clearly shows that the criminal activity involved five or more participants: (1) the Petitioner himself, (2) co-defendant Chalo Alberto Ponce, [PSR at ¶¶ 10-12], (3) co-defendant Lebordo Zuniga Benitez, [PSR at ¶¶ 13-14], (4) co-defendant Ignacio Moreno-Serrano,

16

[PSR at ¶¶15-16], (5) co-defendant Adrian Leonide-Arteaga, [PSR at ¶ 19], (6) Angel Israel Cruz-Montes, [*id.*], (7) the conspiracy's marijuana supplier, [referred to in PSR at ¶ 11], and (8) the conspiracy's cocaine supplier. This objection, no matter how ineffectively argued by counsel, was without merit and counsel cannot be ineffective for failing to raise or argue a meritless claim. *See Chapman v. United States*, 74 F. App'x 590, 593 (6th Cir. 2003).

### C. Ground Three—Additional Facts at Sentencing

Petitioner's plea agreement contained the following sentence: "Both the Defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence," [Doc. 110 at ¶ 4]. Petitioner claims counsel was ineffective for "failing to present" such facts to the Court, apparently as they relate to his arguments on "sentencing entrapment and my entrapment defense," [Doc. 212 at 7]. Beyond that, Petitioner does not indicate what these "additional" facts might be.

This claim fails for two related reasons. First, it is conclusory and does not set forth facts that entitle Petitioner to relief. *See O'Malley*, *supra*. Second, as the government points out, this provision in the plea agreement simply retains the right for either or both parties to present additional facts, to the extent they exist, to the Court at sentencing; it does not create a duty on the part of counsel to do so. This claim is without merit.

### D. Ground Four—Prosecutorial Misconduct

In this ground, Petitioner claims "counsel was ineffective for failing to object to the prosecutor's overall conduct portraited [sic] me as dangerous to increase my sentence," [Doc. 212 at 8]. Petitioner appears to refer to the prosecutor's actions in failing to disclose "the recordings that a jailhouse informant" made at the direction of the FBI, [*id.*], and using

17

them to argue that Petitioner was "more dangerous than your typical drug trafficker" and "exhibited a disregard for human life." [Doc. 199 at 57].

The Court has already discussed the *Brady* claim above. It is hard to follow Petitioner's argument concerning the government's claim that Petitioner was dangerous based on the effort to harm or kill a confidential source. Ours is an adversarial system. "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides will best promote the ultimate objective that the guilty be convicted and the innocent go free." *Herring v. New York*, 422 U.S. 853, 862 (1975). There was nothing improper about the government's argument here. The government attorney simply made an argument that was fairly supported by the evidence before the Court but, even though the Court was concerned by the "very, very serious allegation" that Petitioner "conspired to kill an informant, the Court ultimately imposed a sentence within, but at the top of, the advisory guidelines range. Because the government's argument was fairly supported by, and a reasonable argument to be made from, the evidence, an objection by counsel would have been without merit. There was neither prosecutorial misconduct nor ineffective assistance of counsel.

Although not enumerated as a specific claim in the § 2255 motion, Petitioner also suggests "judicial misconduct" because the Court's statements exhibited "an alignment of the part of the court with one of the parties," i.e., the government, [Doc. 212 at 41]. The fact that the Court may have been unfavorably disposed towards Petitioner by the end of the sentencing hearing does not establish any kind of judicial misconduct or bias on the part of the Court. In fact, the very nature of the judge's work requires that the Court form judgments about the defendant who appears before him for sentencing. When those

judgments are fairly formed, as they were here, based on what the Court learned at the sentencing hearing, the judge has simply carried out the normal and proper responsibilities of his office. Nothing in this record suggests any judicial misconduct.

## IV. Conclusion

For the reasons set forth above, the Court holds Petitioner's conviction and sentence were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 212], will be DENIED and his motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A certificate of appealability should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Slack v. McDaniel, 529 U.S. 473 (2000). Having examined each of Petitioner's claims under the Slack standard, the Court finds that reasonable jurists could not find that the dismissal

19

of his claims was debatable or wrong. Therefore, the Court will DENY a certificate of appealability.

A separate judgment will enter.

**ENTER**:

s/J. RONNIE GREER  
UNITED STATES DISTRICT JUDGE